# In the United States District Court
# for the Southern District of Georgia
# Brunswick Division

| | | |
|---|---|---|
| BANK OF THE OZARKS, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| vs. | * | CV 212-017 |
| | * | |
| ARCO COMMUNITY OUTREACH COALITION, INC., JOSEPH H. MCDONOUGH, JOHN M. FORD, MARY HELEN MOSES, LAURA CROSS, and SUSAN WAINWRIGHT, | * * * * * | |
| | * | |
| Defendants. | * | |

### ORDER

Presently before the Court are three motions. For the reasons stated below, Plaintiff Bank of the Ozarks's Motion for Default Judgment against Defendant Arco Community Outreach Coalition, Inc. is **STAYED**. See Dkt. No. 59. Defendants McDonough and Wainwright's Converted Motion for Summary Judgment is **DENIED**. See Dkt. No. 74. Additionally, as a result of Defendant Ford's Suggestion of Bankruptcy, Dkt. No. 107, the claims against him are **STAYED**.

**BACKGROUND**

Plaintiff Bank of the Ozarks filed this lawsuit to receive repayment of a note issued to Defendant Arco Community Outreach Coalition, Inc. ("Arco") for $750,000. Dkt. No. 90, Ex. 6 ¶ 1. All the other defendants, Joseph N. McDonough, John. M. Ford, Mary Helen Moses, Laura Cross, and Susan Wainwright (collectively "Guarantor Defendants"), signed the note as guarantors. Dkt. No. 52 ¶¶ 15-24.

The note and the guaranty agreements were executed by Bank of the Ozarks' predecessor, Oglethorpe Bank. Bank of the Ozarks acquired the loan documents after Oglethorpe Bank was closed by the Georgia Department of Banking and Finance. See Dkt. No. 52 ¶¶ 36, 41. After the closure, the Federal Deposit Insurance Corporation (FDIC) was appointed the receiver for Oglethorpe Bank, and Bank of the Ozarks later purchased Oglethorpe Bank's loan documents from the FDIC. See Dkt. No. 52 ¶¶ 37, 39, 41.

Although not a party to the present suit, Nancy Coverdell also guaranteed the note. See Dkt. No. 90, Ex. 6 ¶ 3. Oglethorpe Bank allowed Coverdell to alter her guaranty agreement by crossing through certain provisions. Dkt. No. 90, Ex. 6 ¶ 6. As a result of those modifications, Coverdell was not liable on any renewals. Dkt. No. 90, Ex. 6 ¶ 6. When the note was renewed on June 11, 2009, approximately two years after the original note was issued, Coverdell was released from her

obligations as a guarantor because she had removed the provision from her guaranty agreement that made her liable on renewals. Dkt. No. 52 ¶¶ 10, 11. However, all the other guarantors who signed unaltered guaranty agreements remained liable.

Eventually, Arco failed to make payments on the note. Dkt. No. 52 ¶ 29. The note went into default and Bank of the Ozarks brought suit. Acro failed to file an answer, although all of the Guarantor Defendants did. See Dkt. Nos. 19, 24, 28, 30, 69. The Clerk of Court entered default against Arco on March 30th, 2012. Dkt. No. 23. Bank of the Ozarks filed a Motion for Default Judgment against Arco thereafter. See Dkt. No. 59.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The court must view the evidence and draw all inferences in the light most favorable to the nonmovant. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157-59 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986). To discharge this burden, the movant must show the court that there is an absence of evidence to support the nonmoving party's case. Id. at 325. The burden then shifts to

the nonmovant to go beyond the pleadings and present affirmative evidence to show that a genuine issue of fact does exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

### DISCUSSION

### I. Automatic Stay for Claims against Ford

Ford, one of the Guarantor Defendants, filed a Suggestion of Bankruptcy stating that he had filed for bankruptcy in the Southern District of Georgia on December 3, 2012. Dkt. No. 107. Under 11 U.S.C. § 362, Ford is entitled to an automatic stay in this case.

### II. Default Judgment against Arco

Bank of the Ozarks seeks a default judgment against Arco. Arco, although served, failed to file an answer or otherwise respond to the Complaint. See Dkt. No. 8. After the Clerk of Court entered default against Arco, Bank of the Ozarks moved for a default judgment. Dkt. Nos. 23, 59. Defendant Moses opposed the entry of a default judgment and argued that a default judgment, at this stage in the proceeding, would be premature. Dkt. No. 85. This Court agrees with Defendant Moses and will reserve ruling on Bank of the Ozarks's motion until the liability of the Guarantor Defendants is determined.

Under Federal Rule of Civil Procedure 54(b), a final judgment that determines the liability of some parties, but not all parties, may be entered "only if the court expressly

4

determines that there is no just reason for the delay." Because the liability of the Guarantor Defendants is yet to be determined, this Court determines that there is a just reason to delay a default judgment against Arco.

Over a hundred years ago, the Supreme Court held that, if a plaintiff alleges that two defendants are jointly and severally liable, a default judgment against one defendant cannot be entered before the liability of the non-defaulting defendant is determined. See Frow v. De La Vega, 82 U.S. 552, 554 (1872). The reason being that two different judgments against joint defendants would be inconsistent and illogical. Id. Although some circuits have limited Frow to joint and several liability, the Eleventh Circuit has stated that Frow extends to cases where "defendants are similarly situated, but not jointly liable." Gulf Coast Fans, Inc. v. Midwest Elecs. Importers, Inc., 740 F.2d 1499, 1512 (11th Cir. 1984); but see In re Uranium Antitrust Litig., 617 F.2d 1248, 1257 (7th Cir. 1980) (Frow not applicable where different results as to different parties not logically inconsistent); Whelean v. Abell, 953 F.2d 663, 674 (D.C. Cir. 1992) (narrowly construing Frow); Frazetta v. Turner & Newall, Ltd., 797 F.2d 151, 154 (3d Cir. 1986) (interpreting Frow to preclude only logically inconsistent default judgments).

Under Georgia law, a guarantor is jointly and severally liable with the principal for the guaranteed debt. See O.C.G.A.

AO 72A
(Rev. 8/82)

§ 10-7-1; <u>McCorvey Grading & Pipeline, Inc. v. Blalock Oil Co.</u>, 602 S.E.2d 842, 844 (Ga. Ct. App. 2004). In the present case, the relationship between the Guarantor Defendants and Arco is made slightly more complicated because, while Arco can be liable on the entire amount of the note, each guarantor only guaranteed $100,000 of the $750,000 loan. Guaranty Agreements ¶ 4. Despite this complication, at the very least, Arco and the Guarantor Defendants are "similarly situated." <u>Gulf Coast Fans</u>, 740 F.2d at 1512. The liability of the Guarantor Defendants is derivative of Arco's liability. Although Arco could be held liable even if the Guarantors were not, the Guarantors could not be held liable if Arco was not. Accordingly, under <u>Gulf Coast Fans</u> this Court will reserve issuing a default judgment until the Guarantor Defendants' liability is determined.

Bank of the Ozarks contends that this Court should not postpone the default judgment because the Georgia Supreme Court declined to follow <u>Frow</u> in interpreting Rule 54(b) of Georgia's Civil Practice Act. See <u>Fred Chenoweth Equip. Co. v. Oculus Corp.</u>, 328 S.E.2d 539, 541 (1985). Under <u>Erie</u> principles, a federal court sitting in diversity applies state substantive law but federal procedural rules. The current issue is procedural, rather than substantive. This Court, therefore, must apply Rule 54(b) of the Federal Rules of Civil Procedure, not Rule 54(b) of Georgia's Civil Practice Act. See <u>Hanna v. Plummer</u>, 380 U.S.

6

460, 470-74 (1965) (federal court sitting in diversity must apply a Federal Rule of Civil Procedure as long as that rule is valid). In conclusion, the Guarantor Defendants' unsettled liability constitutes good reason to delay entering a default judgment under Federal Rule of Civil Procedure 54(b).

### III. Effect of Coverdell's Release on the Other Guarantors

McDonough and Wainwright argue that because Oglethorpe Bank, Bank of the Ozarks's successor, allowed Nancy Coverdell to make changes to her guaranty agreement that allowed her to escape liability, then none of the guaranty agreements are enforceable. To support their argument, Defendants contend that the release of Coverdell without the knowledge or consent of any of the other guarantors discharged all the other guarantors under O.C.G.A. § 10-7-20 and § 10-7-21. Section 10-7-20 states that "the release of or compounding with one surety shall discharge a cosurety." Section 10-7-21 states that "[a]ny change in the nature or terms of a contract is a 'novation,'" and if a surety dos not consent to a novation, then the novation discharges the surety's obligations. See also Thomas-Sears v. Morris, 628 S.E.2d 241, 243-44 (Ga. Ct. App. 2006).

While § 10-7-20 or § 10-7-21 might ordinarily allow the release of Defendants in this situation, each of the guaranty agreements signed by Defendants has a provision that expressly

allowed the release of another guarantor without consent. That provision states:

> The liability of the Undersigned shall not be affected or impaired by any of the following acts or things (which Lender is expressly authorized to do, omit or suffer from time to time, both before and after revocation of this guaranty *without notice to or approval by the Undersigned*: . . . (iv) any full or partial release of, settlement with, or agreement not to sue, Borrower *or any other guarantor* or other person liable in respect of any Indebtedness . . . ."

Guaranty Agreements ¶ 6 (emphasis added). Georgia courts have held that similar language in a guaranty agreement waives a guarantor's right to rely on O.C.G.A. § 10-7-20 or § 10-7-21. See Ramirez v. Golden, 478 S.E.2d 430, 431 (Ga. Ct. App. 1996) ("[T]he protection afforded by O.C.G.A. §§ 10-7-21; Baby Days, Inc. v. Bank of Adairsville, 463 S.E.2d 171, 174 (Ga. Ct. App. 1995) (holding that, because of language contained in guaranty agreement, guarantors waived their right to claim discharge under O.C.G.A. § 10-7-20) .

Additionally, the guaranty agreements contained a clause stating that the guarantors agreed to "waive[] any and all defenses, claims and discharges of Borrower, or any other obligor, pertaining to Indebtedness except the defense of discharge by payment in full." Guaranty Agreements ¶ 7. Courts do enforce such broad language. See Bank of the Ozarks v. 400 South Land Co., LLC, No. 2:11-CV-00129-RWS, 2012 WL 3704807 (Aug. 27, 2012) (holding that identical language

8

"clearly and unambiguously bar[red] 'any and all defenses . . . pertaining to indebtedness'"); Fielbon Dev. Co., LLC v. Colony Bank of Houston Cnty., 660 S.E.2d 801, 807-808 (Ga. Ct. App. 2008). In addition to the more specific language contained in Paragraph Six, this language also operates to waive the Guarantor Defendants' defense based on Coverdell's release. See Ramirez v. Golden, 478 S.E.2d 430 (Ga. Ct. App. 1996) (holding that waiver of "any legal or equitable defenses whatsoever" waived defenses under O.C.G.A. §§ 10-7-21, 10-7-22).

McDonough and Wainwright also argue that they were accommodation makers under Georgia law and, as result, were released from liability. See Dkt. No. 105. Even if they were accommodation makers, however, Defendants would not be released from liability because of the waiver provisions quoted above.

Under Georgia law, accommodation makers, who are essentially uncompensated sureties, receive special protections. Because accommodation makers "risk their estates out of some motive (whether friendship or kinship) other than financial gain," they are "favorites of the law" and receive special statutory protections. See Houston Gen. Ins. Co. v. Rock Constr. Co., Inc., 246 S.E.2d 316, 318 (Ga. 1978). The statutory protection that Defendants rely on is O.C.G.A § 11-3-605, which provides that "[i]f a person entitled to enforce an instrument agrees . . . to a material modification of obligation

of a party . . . the modification discharges the obligation of an indorser or accommodation party . . . ." Defendants argue that Oglethorpe Bank allowing Coverdell to modify her guarantee was a material modification. Thus, Defendants argue, that material modification discharged the other guarantors.

This argument must fail for the same reason Defendants' argument based on O.C.G.A. § 10-7-20 fails—Defendants explicitly waived this protection. Paragraph Six of the guarantee agreements specifically allowed Oglethorpe Bank to release or settle with other guarantors without Defendants' consent or knowledge. Guaranty Agreements ¶ 6. As a result, any defense that Defendants may have had based on O.C.G.A. § 10-7-20 was waived.

To avoid the waiver provisions, Defendants argue that those provisions do not address the present situation because the alteration of Coverdell's guaranty was not a release of or settlement with Coverdell. Instead, Defendants argue that Oglethorpe Bank's conduct amounted to fraudulent inducement because Defendants did not know, when they signed the guaranty agreements, that Coverdell had modified her agreement. See Dkt. No. 105. Defendants contend that the waiver provisions do not apply to fraudulent inducement.

Even assuming, *arguendo*, that Defendants are correct and the waiver provisions do not apply to the present situation with

10

Coverdell, Defendants' fraud defense would still be unsuccessful because of the D'Oench doctrine and its statutory counterpart, 12 U.S.C. § 1823(e)(1). Under the D'Oench doctrine, when a federally insured bank fails, the bank's borrowers may not later assert claims or defenses other than legal defenses that are fully and properly documented in the failed bank's files. See Baumann v. Savers Fed. Sav. & Loan Ass'n, 934 F.2d 1506, 1515 (11th Cir. 1991).[1] The rationale being that (1) regulators should be able to rely on the regular bank records when making decisions; and (2) banks headed for failure should not be allowed to insert unusual or even fraudulent new terms. See Langley v. FDIC, 484 U.S. 86, 91-93 (1987).

The Supreme Court has held that, even if a bank fraudulently induces a party into signing a note, 12 U.S.C. § 1823 bars the party from relying on the bank's misrepresentation as a defense against the bank's successor for payment of the note. See Id. at 93. Accordingly, Defendants cannot receive summary judgment based on Oglethorpe Bank's alleged misrepresentations and fraudulent inducement. That defense is barred by Langley. Even apart from the Guaranty

---

[1] The Eleventh Circuit has not decided whether § 1823(e)(1) applies just to the FDIC, or whether it also applies to a bank that succeeds the FDIC, like Bank of the Ozarks. However, the D'Oench doctrine does apply to a successor-in-interest. See First Union Nat'l Bank v. Hall, 123 F.3d 1374, 1379 n.9 (11th Cir. 1997); Victor Hotel Corp. v. FCA Mortg. Corp., 928 F.2d 1077, 1083 (11th Cir. 1991).

11

Agreement's waiver provisions, the alterations in Coverdell's guarantee do not release Defendants from liability.

### IV. Foreclosure as a Condition Precedent

Defendants also argue that Bank of the Ozarks cannot recover from the guarantors because foreclosure was a condition precedent written in the guaranty agreements. To support this argument, Defendants cite the following provision in the guaranty agreements:

> The Undersigned expressly agrees that the Undersigned shall be and remain liable, to the fullest extent permitted by law, *for any deficiency remaining after any foreclosure* of any mortgage or security interest securing Indebtedness . . . .

Guaranty Agreements ¶ 7 (emphasis added). While that language does suggest that foreclosure might be required, other language in the guaranty agreements directly refutes that interpretation. In Paragraph Eleven, the agreement specifically states that:

> Lender shall not be required first to resort for payment of the Indebtedness to Borrower or other persons or their proprieties, or first to enforce, realize upon or exhaust any collateral security for Indebtedness, before enforcing this guaranty.

Guaranty Agreements ¶ 11. This language speaks directly to this issue and clearly indicates that foreclosure is not required before seeking to enforce the guaranty agreements.

Not only does the agreement itself not require foreclosure, but Georgia law also does not require foreclosure. Under well-established principles, creditors can choose to "either sue on

12

the note, foreclose on the deed, or both." River Farm, LLC v. SunTrust Bank, 699 S.E.2d 771, 772 (Ga. Ct. App. 2010); see also State Bank of Tex. v. Patel, 453 F. App'x 857, 860 (11th Cir. 2011) ("[U]nder Georgia law, secured creditors are not put to an election of remedies in deciding whether to sue on a note or foreclose on collateral."). For these reasons, Defendants' argument that foreclosure was a condition precedent is unavailing.

### V. Alternative Theory of Unjust Enrichment

Finally, Bank of the Ozarks should be allowed to proceed with its alternative theory of recovery, unjust enrichment. Defendants argue that they are entitled to summary judgment on Bank of the Ozarks's unjust enrichment claim because a plaintiff cannot recover on both an express contract theory and an unjust enrichment theory. See Dkt. No. 74 (quoting Harden v. TRW, Inc., 959 F.2d 201, 204 (11th Cir. 1992)).

While Bank of the Ozarks cannot recover on both of those theories, that fact does not warrant summary judgment at this stage in the litigation. Bank of the Ozarks pled the unjust enrichment theory as an alternative theory of recovery and should be allowed to proceed with the theory as an alternative to an express contract. Dkt. No. 52.

The cases cited by Defendants to argue otherwise are distinguishable. Defendants cite Obester and Goldstein to argue

13

that, if a plaintiff incorporates facts concerning a contract into an unjust enrichment claim, that claim must fail. <u>Obster v. Lucas Assocs., Inc.</u>, No. 1:08-CV-03491, 2010 WL 8292401 (N.D. Ga. 2010); <u>Goldstien v. Home Depot U.S.A., Inc.</u>, 609 F. Supp. 2d 1340, 1347 (N.D. Ga. 2009). However, in both <u>Obster</u> and <u>Goldstein</u> the existence and validity of the contract was undisputed. In <u>Obster</u>, the court stated that summary judgment was appropriate "since [the plaintiff corporation] alleged that there [was] an express contract between it and [the defendant], which [was] uncontested by [the plaintiff]." <u>Obester</u>, 2010 WL 8292401 at * 19. Likewise, in <u>Goldstien</u>, both the plaintiff and the defendant agreed to the existence of a valid contract. <u>Goldstein</u>, 609 F. Supp. 2d at 1347.

Accordingly, those cases stand for the proposition that "[w]hile a party may plead equitable claims in the alternative, the party may only do so if one or more of the parties contests the existence of an express contract governing the subject of the dispute." <u>Id.</u>; <u>see also</u> <u>Am. Casual Dining, L.P. v. Moe's Sw. Grill, LLC</u>, 426 F. Supp. 2d 1356, 1371 (N.D. Ga. 2006) ("When neither side disputes the existence of a valid contract, the doctrine of promissory estoppel does not apply, even when it is asserted in the alternative."). Here, Defendants actively contest the validity of the Guaranty Agreements. <u>See</u> Dkt. No. 105 (claiming that the Guaranty Agreements cannot be enforced

14

due to fraudulent inducement). Bank of the Ozarks cannot recover on both theories, but at this early stage in the litigation, they can proceed with both.

## CONCLUSION

For the reasons stated above, Bank of the Ozarks's Motion for Default Judgment against Arco, Dkt. No. 59, is **STAYED**. McDonough and Wainwright's Converted Motion for Summary Judgment, Dkt. No. 74, is **DENIED**. The claims against Ford are also **STAYED** as a result of his Suggestion of Bankruptcy, Dkt. No. 107.

**SO ORDERED**, this 15th day of January, 2013.

LISA GODBEY WOOD, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA