# In the United States District Court
# for the Southern District of Georgia
# Brunswick Division

BANK OF THE OZARKS,

    Plaintiff,

vs.                                         CV 212-017

ARCO COMMUNITY OUTREACH
COALITION, INC., JOSEPH N.
MCDONOUGH, JOHN M. FORD, MARY
HELEN MOSES, LAURA CROSS, and
SUSAN WAINRIGHT,

    Defendants.

### ORDER

The present case illustrates the truth of the old adage "no good deed goes unpunished." Prior to the downturn in the economy, Joseph McDonough, Mary Helen Moses, Laura Cross, and Susan Wainright guaranteed a loan to Arco Community Outreach Coalition, a charitable institution. Bank of the Ozarks, in the present suit, seeks to recover for the default of that loan. The Court has no choice but to hold these well-intentioned individuals to the promises they made several years ago.

Accordingly, Bank of the Ozarks's Motion for Summary Judgment, Dkt. No. 112, is **GRANTED**. Defendant Mary Helen

Moses's Motion to Strike the Affidavit Testimony of Amanda Jones, Dkt. No. 121, is **DENIED**. Bank of the Ozarks's previously-stayed Motion for Default Judgment as to Arco, Dkt. No. 59, will now be **GRANTED**.

## BACKGROUND

Plaintiff Bank of the Ozarks filed this lawsuit to receive repayment of a note issued to Defendant Arco Community Outreach Coalition, Inc. ("Arco") for $750,000. Dkt. No. 90, Ex. 6 ¶ 1. Joseph McDonough, Mary Helen Moses, Laura Cross, and Susan Wainright (collectively "Guarantor Defendants")[1] were members of Arco's Board of Directors and signed guaranty agreements regarding the loan. See Dkt. No. 114, Ex. 4, 8:20-22; Dkt. No. 114, Ex. 5, 17:1-25; Dkt. No. 133, ¶ 3.

The note and the guaranty agreements were executed by Bank of the Ozarks' predecessor, Oglethorpe Bank. Bank of the Ozarks acquired the loan documents after Oglethorpe Bank was closed by the Georgia Department of Banking and Finance. See Dkt. No. 112, Ex. 3 (Purchase and Assumption Agreement). After the closure, the Federal Deposit Insurance Corporation (FDIC) was appointed the receiver for Oglethorpe Bank, and Bank of the

---

[1] John Ford, a defendant in this case, also allegedly guaranteed the loan. Ford is subject to an automatic stay in bankruptcy. Dkt. No. 111. Accordingly, Bank of the Ozarks, at this time, has not moved for summary judgment against him. For purposes of this Order, "Guarantor Defendants" refers solely to McDonough, Moses, Cross, and Wainright.

Ozarks later purchased Oglethorpe Bank's loan documents from the FDIC. See Dkt. No. 112, Ex. 2, ¶ 14.

Although not a party to the present suit, Nancy Coverdell also guaranteed the note. Dkt. No. 74, Ex. 1. Oglethorpe Bank allowed Coverdell to alter her guaranty agreement by crossing through certain provisions. Dkt. No. 74, Ex. 1. As a result of those modifications, Coverdell was not liable on any renewals. Dkt. No. 74, Ex. 1. When the note was renewed on June 11, 2009, approximately two years after the original note was issued, Coverdell was released from her obligations as a guarantor because she had removed the provision from her guaranty agreement that made her liable on renewals. However, all the other guarantors who signed unaltered guaranty agreements remained liable.

Eventually, Arco failed to make payments on the note. Dkt. No. 112, Ex. 2, ¶¶ 11-12. The note went into default, and Bank of the Ozarks brought suit.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The court must view the evidence and draw all inferences in the light most favorable to the nonmovant. Adickes v. S.H. Kress & Co., 398 U.S. 144,

3

157-59 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986). To discharge this burden, the movant must show the court that there is an absence of evidence to support the nonmoving party's case. Id. at 325. The burden then shifts to the nonmovant to go beyond the pleadings and present affirmative evidence to show that a genuine issue of fact does exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

## DISCUSSION

Bank of the Ozarks has demonstrated that it is entitled to summary judgment. All of the Guarantor Defendants' arguments in opposition are unavailing.

**I. Motion to Strike Jones Affidavit**

Moses has moved to strike the Affidavit Testimony of Amanda Jones ("Jones Affidavit") that Bank of the Ozarks submitted in support of its summary judgment motion. The parties disagree about whether a motion to strike is the appropriate vehicle to challenge the evidence. The arguments could be appropriately asserted in a challenge to the admissibility of the Jones Affidavit, rather than as a separate motion to strike. See Smith v. Life Ins. Co. of N. Am., 466 F. Supp. 2d 1275, 1283 (N.D. Ga. 2006) ("A motion to strike is not the proper vehicle for challenging the admissibility of evidence set forth in an

affidavit. Rather, plaintiff should have filed a notice of objection to the challenged testimony."); $66,839.59 v. IRS, 119 F. Supp. 2d 1358, 1359 n.1 (N.D. Ga. 2000) ("Rather than filing a motion to strike as under Rule 12, the proper method for challenging the admissibility of evidence in an affidavit is to file a notice of objection to the challenged testimony."). Nevertheless, the Court will consider the substance of Moses's arguments.

Moses contends that the Jones Affidavit is a sham affidavit because Jones previously testified that she did not have personal knowledge of the guaranty agreements. See Dkt. No. 121. On September 28, 2012, this Court held a motions hearing regarding Arco's default. See Dkt. No. 119. Bank of the Ozarks presented Jones as a witness to testify regarding Arco's liability. See Dkt. No. 119. Because a default judgment against Arco would impact the guarantors, Moses's counsel was allowed to cross examine Jones. Moses's counsel asked Jones which documents she reviewed to prepare for her testimony at the hearing. Dkt. No. 119, 18:1-6. Jones responded that she reviewed "[t]he documents of record in the loan files," which consisted of "[t]he loan contract, note, the security deed" and Arco's payment history. Dkt. No. 119, 18:1-10. Although the hearing concerned Arco's liability, Moses's counsel posed the following question to Jones: "As far as the guarantees of the

5

individuals that are being sued, do you have any personal knowledge as to those guarantees?" Dkt. No. 119, 24:17-19. Jones answered that she did not. Dkt. No. 119, 24:20.

Moses's counsel contends that Jones's testimony at the hearing is inconsistent with the testimony contained in her affidavit. In her Affidavit, Jones states that the affidavit is "based on [her] personal knowledge, and through the review of business records of Bank of the Ozarks." Dkt. No. 112, Ex. 2. Jones recounts that she is currently employed as a Special Assets Officer for Bank of the Ozarks and, before that, she was employed by Oglethorpe Bank. Dkt. No. 112, Ex. 2. Jones states she is "familiar with the recordkeeping methods of both [Bank of the Ozarks] and Oglethorpe [Bank]." Dkt. No. 112, Ex. 2. The Jones Affidavit later states "[o]n May 23, 2007, Mary Helen Moses ("Moses") guaranteed Arco's repayment and performance under the Note . . . ." Dkt. No. 112, Ex. 2.

"A district court may disregard an affidavit as a sham when a party to the suit files an affidavit that contradicts, without explanation, prior . . . testimony on a material fact." Kernel Records Oy v. Mosley, 694 F.3d 1294, 1300 n.6 (11th Cir. 2012) (citations omitted). The Eleventh Circuit has cautioned that "[t]he sham affidavit rule should be applied sparingly and only when the earlier . . . testimony consists of clear answers to unambiguous questions which negate the existence of any genuine

6

issue of material fact." Id. (internal citations and quotations omitted).

The Jones Affidavit clearly does not qualify as a sham. The responses given by Jones in the motions hearing are consistent with the statements contained in her affidavit. Jones has consistently explained that her knowledge of the loan documents pertinent to the present case is based on her personal knowledge of Oglethorpe Bank and Bank of the Ozarks's business practices and her review of the documents in the loan file kept pursuant to those business practices. It appears entirely possible, indeed likely, that Jones had not reviewed the documents relating to the Guarantor Defendants in preparation for her testimony regarding Arco's liability but has since reviewed the pertinent documents. The situation would be different if, for example, Jones had testified that she was not present when Moses signed the document, but now submitted an affidavit saying she was present at that time. Moses's argument that the Jones Affidavit should be disregarded as a sham is unavailing.

**II. Enforceability of the Second Page of the Moses Guaranty**

Moses contends there is a material issue of fact as to whether she is bound by the second page[2] of the guaranty agreement. See Dkt. No. 129. Moses admits that she signed a document in connection with the loan to Arco and that it is her signature that appears on the guaranty agreement produced by Bank of the Ozarks. Dkt. No. 114, Ex. 5, 17:12-25, 18:1. Moses submitted an affidavit in opposition to summary judgment that states that "[she] does not recall being given a two-page document to sign, or there being text on the back of the document [she] signed." Dkt. No. 129, Ex. 2, ¶ 11. Moses further states she "do[es] not recall reviewing or initialing a second page or being asked to do so by an Oglethorpe Bank employee." Dkt. No. 129, Ex. 2, ¶ 11. Indeed, Moses's initials do not appear on the second page of the guaranty agreement. See Dkt. No. 52, Ex. 1.

Moses argues that, because of her testimony and the absence of her initials on the second page, there is an issue of fact as to whether Moses is bound by the provisions contained on the

---

[2] Moses's briefs in opposition to summary judgment repeatedly reference the fact that prior to the submission of the Jones Affidavit, Bank of the Ozarks had not informed Moses that the guaranty agreement was a one-page double-sided document, rather than a two-page document with text only on the front side of those pages. Throughout the course of this suit, Bank of the Ozarks has consistently represented the guaranty agreements as two pages of text. Whether those pages are on two physically separate pieces of paper or on reverse sides of a single physical sheet of paper is not material for purposes of the Motions before the Court.

8

second page of the agreement. See Dkt. No. 129. Moses is bound by all the provisions of the agreement she signed. Under Georgia caselaw, it is well-established that a party is bound to the entire contents of a document signed, whether or not the party reads the entire document. See Megel v. Donaldson, 654 S.E.2d 656 (Ga. Ct. App. 2007); Charles S. Martin Distrib. Co. v. Bernhardt Furniture Co., 445 S.E.2d 297 (Ga. Ct. App. 1994); see also Caves v. Columbus Bank & Trust Co., 589 S.E.2d 670, 675 (Ga. Ct. App. 2003) ("[Guarantor's] failure to read the guaranty carefully and inform himself about his obligations . . . cannot discharge him from liability.").

The first page of the guaranty agreement, to which Moses has admitted signing, contains two references to the additional page. See Dkt. No. 52, Ex. 1. In bold lettering close to the signature line the document states: **"This guarantee includes the additional provisions on page 2, all of which are made a part hereof."** Dkt. No. 52, Ex. 1 (emphasis in original). At the bottom of the page in italics appears "*(page 1 of 2)*." Dkt. No. 52, Ex. 1 (emphasis in original).

The facts of the present case closely resemble those presented in Charles S. Martin Distribution. In that case, a personal guarantor signed an addendum to a personal guarantee, "but claim[ed] he d[id] not recall seeing the guarantee until after signing the addendum because the papers were not attached

9

to each other." 445 S.E.2d at 299. The addendum that the guarantor signed explicitly referenced the guaranty agreement. Id. The Court of Appeals of Georgia rejected the guarantor's argument that he could not be bound by the terms appearing in the guaranty agreement because he only signed the addendum. Id. The court stated:

> [The guarantor] cannot avoid those terms by claiming that he failed to see the entire document he signed. There are few rules of law more fundamental than that which requires a party to read what he signs and to be bound thereby. It is well established that a party who can read must read, or show legal excuse for not doing so, such as an emergency which excused the failure to read; or fraud of the other party not merely as to what is in the document, but by some trick or device which prevented him from reading it. The addendum signed by [the guarantor] plainly incorporated by reference the personal guarantee, which has a clear and ascertainable meaning. We conclude that [the guarantor] also had a duty to read the personal guarantee incorporated by the paper he signed.

Id. The application of that rule is even more clear in the present case; the provisions Moses seeks to avoid are not contained in a separate document but appear on the second page of the document she admits to signing. The page Moses admittedly signed twice references the additional page. Moses, by signing the first page, is bound by all the terms of the guaranty agreement.

AO 72A
(Rev. 8/82)

### III. Fraudulent Inducement Based on the Number of Guarantees

The Guarantor Defendants suggest that they were fraudulently induced into signing the guaranty agreements because Oglethorpe Bank represented to them that the bank only needed $500,000 in guarantees. The Guarantor Defendants assert that they were under the impression that, if more than five people signed guarantees, the principal amount guaranteed by each individual would be reduced. <u>See</u> Dkt. No. 132. To support this argument the Guarantor Defendants reference a "Finance Committee Report" from Harmony Square, a non-profit organization with some affiliation with Arco that was sent to Oglethorpe Bank and contained within the loan file. Harmony Square's Finance Committee Report states:

> At present, we have 5 board members guaranteeing $100,000. If additional board members agree to guarantees, it will lower individual board members share by dividing the number of guarantors (min 5) into $500,000.

Dkt. No. 134, Ex. 1.

While that may have been the Guarantor Defendant's impression, the guaranty agreements contained no reference to such an understanding. To the contrary, Paragraph Two of the agreements states "This is an absolute, unconditional, and continuing guaranty of payment." Paragraph Four limits the liability of the signor to $100,000 but contains no indication that the amount will be dependent on the number of guarantors.

11

The Guarantors cannot claim fraudulent inducement based on an understanding that was quite clearly renounced by the document they signed. See Martin v. Centre Pointe Invs., Inc., 712 S.E.2d 638, 641 (Ga. Ct. App. 2011) ("In order to prove the fourth element of [fraud,] justifiable reliance, a party must show that he exercised his duty of due diligence.") (citations omitted).

### IV. Fraudulent Inducement Based on Coverdell's Alterations to Her Guarantee Agreement

In prior motions, the Guarantor Defendants urged that Coverdell's release constituted a novation and therefore they were released as well. The Guarantor Defendants now present a similar argument under the doctrine of fraudulent inducement. Bank of the Ozarks advances several reasons why this fraudulent inducement claim must fail, including the D'Oench doctrine and the guaranty agreement's waiver provision which explicitly waives the defense of fraud. Setting aside those obstacles, the Guarantor Defendants' fraudulent inducement claim fails to satisfy the required elements.

Fraud has five elements (1) a false representation, (2) scienter, (3) an intention to induce the party to act or refrain from acting, (4) justifiable reliance, and (5) damage to plaintiff. Baxter v. Fairfield Fin. Servs., Inc., 704 S.E.2d 423 (Ga. Ct. App. 2010). According to the Guarantor Defendants,

Oglethorpe Bank misrepresented facts because the 2007 Note to Arco stated "PERSONAL GUARANTORS OF JOE MCDONOUGH, JOHN FORD, NANCY COVERDELL, MARY HELEN MOSES, LAURA CROSS, AND SUSAN WAINRIGHT." Dkt. No. 134. The Guarantor Defendants object that no reference was made to the fact that Coverdell's guarantee agreement did not contain all the same terms as the other guarantee agreements. See Dkt. No. 134. The Court does not consider that to be a misrepresentation since Coverdell did personally guarantee the 2007 Note.

The Guarantor Defendants also object to the fact that the same sentence listing the personal guarantors appeared on the 2009 Note Renewal. Coverdell was listed as a personal guarantor, even though she was automatically released because her guaranty agreement did not contain the automatic renewal language. Thus, the sentence in the 2009 Note Renewal was indeed inaccurate. However, the Guarantor Defendants cannot establish that they justifiable relied on that sentence in the 2009 Note Renewal because, subject to the 2007 guaranty agreements they signed, their guarantees automatically renewed. Accordingly, Oglethorpe Bank did not fraudulently induce the Guarantor Defendants into signing the guaranty agreements.

**V. Failure to Foreclose as a Breach of the Duty of Good Faith and Fair Dealing**

In their earlier motions for summary judgment, the Guarantor Defendants argued that foreclosure was a condition precedent. This Court rejected that argument given that Paragraph Eleven explicitly disavowed any such requirement and because Georgia law does not require foreclosure. Dkt. No. 111.

In opposition to Bank of the Ozarks's Motion for Summary Judgment, the Guarantor Defendants essentially re-urge that point but package it slightly differently. The Guarantor Defendants now contend that Bank of the Ozarks failure to foreclose on the collateral constitutes a breach of the duty of good faith and fair dealing in light of the Guarantor Defendants' status as accommodation makers. However, the Guarantor Defendants have failed to cite a case or otherwise articulate why a party violates the duty of good faith and fair dealing by pursuing a course of action allowed by explicit contractual right and applicable law.

**VI. Adequacy of Consideration**

Oglethorpe Bank transferred the funds to Arco, rather than the Guarantor Defendants personally. As a result, the Guarantor Defendants contend that the guaranty agreements are unenforceable due to failure of consideration. That argument is meritless.

14

Under well-established law, "[c]onsideration for a guarantor's signature is the extension of credit to his principal." Beard v. McDowell, 331 S.E.2d 104, 106 (Ga. Ct. App. 1985) (citing Griswold v. Whetsell, 278 S.E.2d 753 (1981)). Indeed, by statute, Georgia defines a guaranty as a contract "whereby a person obligates himself to pay the debt of another in consideration of a benefit flowing to the surety or in consideration of credit or indulgence or other benefit given to his principal." O.C.G.A. § 10-7-1. Here, the Guarantor Defendants promised to guarantee Arco's debt in consideration for Oglethorpe Bank extending funds to Arco.

The Guarantor Defendants make much of the fact that they received no personal financial gain from Oglethorpe Bank's extension of credit. See Dkt. Nos. 129, 134. The Guarantor Defendants distinguish the cases cited by Bank of the Ozarks by stating that, in those cases, the guarantor had a financial stake in the principal corporation. Here, while all the Guarantor Defendants were board members of Arco, they did not have a financial interest in Arco's success. Dkt. No. 134, at 27. Their interests were humanitarian. The Court, however, finds no basis for concluding that there is no consideration if a guarantor does not have a personal financial benefit in the extension of credit. The doctrine of consideration is not limited to financial gain. Growth Properties of Fla., Ltd., IV

15

v. Wallace, 310 S.E.2d 715, 717 (Ga. Ct. App. 1983) ("A surety agreement, to be enforceable, must be supported by adequate consideration, although such consideration need not be in monetary form in order to be deemed adequate.") (citations omitted); see also Hamer v. Sidway, 124 N.Y. 538 (Ct. App. N.Y. 1891) (seminal contract case holding that a nephew's abstention from alcohol, tobacco, and other activities was adequate consideration for an uncle's promise). The guaranty agreements are not invalid for lack of consideration.

### VII. Bank of the Ozarks's Motion for Default Judgment against Arco

Now that the Guarantor Defendant's liability has been determined, the Court will grant Bank of the Ozarks's Motion for Default Judgment against Arco. The Court will not certify the judgment as final at this time because of the claims against Defendant Ford.

### CONCLUSION

For the reasons stated above, summary judgment in favor of Bank of the Ozarks is warranted. Defendant Moses's Motion to Strike Affidavit Testimony of Amanda Jones, Dkt. No. 121, is **DENIED**. Bank of the Ozarks's Motion for Summary Judgment, Dkt. No. 112, is **GRANTED**. Bank of the Ozarks's stayed Motion for Default Judgment as to Arco, Dkt. No. 59, will now be **GRANTED**.

Bank of the Ozarks's claims against Defendant Ford who is subject to an automatic stay in bankruptcy remain pending.

**SO ORDERED**, this 20th day of August, 2013.

                      LISA GODBEY WOOD, CHIEF JUDGE
                      UNITED STATES DISTRICT COURT
                      SOUTHERN DISTRICT OF GEORGIA